BANDEEN v PUBLIC SCHOOL EMPLOYEES' RETIREMENT BOARD

Docket No. 279363. Submitted December 2, 2008, at Lansing. Decided February 24, 2009, at 9:10 a.m.

Nancy Bandeen worked as a substitute teacher in a Boston, Massachusetts, public school for a few days in the 1973 school year and discontinued that work on December 21, 1973, choosing to stay home while she was pregnant. She started teaching full-time in 1985 and retired in 2005. Bandeen filed an application with the Office of Retirement Services to purchase 3.1 years of service credit for part of the period between when she stopped being a substitute teacher and when she started teaching full-time. She claimed that she was on maternity leave and rearing children during that period. The Public School Employees' Retirement Board denied the application. The Calhoun Circuit Court, Allen L. Garbrecht, J., affirmed on appeal. Bandeen appealed by leave granted.

The Court of Appeals *held*:

The circuit court did not err by affirming the board's decision to deny Bandeen's application to purchase maternity/child rearing service credit.

1. MCL 38.1375 of the Public School Employees Retirement Act allows a member of the public school employees' retirement system who left service as a public-school employee in or outside Michigan for purposes of maternity, paternity, or child rearing and returned to service as a public-school employee to purchase service credit for the period during which the member was separated from service as a public-school employee.

2. As a teacher who had no contract of hire and could refuse an offer of hire for a day as a substitute for a regular teacher, Bandeen did not begin a leave of absence as a public-school employee for purposes of MCL 38.1375 at the time she decided to no longer accept substitute-teaching assignments.

3. The length of time between when Bandeen stopped accepting substitute-teaching assignments and the birth of her child together with the lack of documentation that she was unable to

teach because of a medical condition were adequate reasons for the board's determination that Bandeen did not take a leave for maternity reasons.

Affirmed.

PENSIONS — PUBLIC SCHOOL EMPLOYEES' RETIREMENT SYSTEM — TEACHERS — SUBSTITUTE TEACHERS — SERVICE CREDITS FOR PENSION PURPOSES.

A member of the public school employees' retirement system does not leave service as a public-school employee in or outside Michigan for maternity, paternity, or child-rearing, within the meaning of a provision of the Public School Employees Retirement Act that allows the purchase of service credit for pension purposes for maternity, paternity, or child-rearing leaves of absence, if the member merely stops accepting day-to-day offers of hire as a substitute teacher (MCL 38.1375).

*Humbarger, Zebell & Parks, P.C.* (by *Robert L. Humbarger*), for the petitioner.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, and *Stephen M. Rideout*, Assistant Attorney General, for the respondent.

Before: SAAD, C.J., and FITZGERALD and BECKERING, JJ.

PER CURIAM. Petitioner, Nancy Bandeen, appeals by leave granted the circuit court order affirming the administrative decision of respondent, Public School Employees' Retirement Board, to deny petitioner's application to purchase maternity/child-rearing service credit for purposes of calculating petitioner's retirement pay. We affirm.

FACTS AND PROCEDURAL HISTORY

The facts are not in dispute. Petitioner obtained a Bachelor's Degree in Education in 1971. She relocated from Michigan to Boston and registered there as a substitute teacher. Petitioner taught approximately 8 to 12 days for the Lincoln Public School District in Boston

during the first half of the 1973 school year. Petitioner discontinued her service as a substitute teacher on December 21, 1973. She did not resume teaching after the holiday break because "I was pregnant. I wanted to stay home with my children, so I stayed home."[1] Petitioner's first baby was born in May 1974, and she had another baby 18 months later. Petitioner returned to full-time teaching in 1985. She worked as a full-time teacher until her retirement in August 2005.

Before her retirement, petitioner filed two applications with the Michigan Office of Retirement Services (ORS). The first application requested to purchase out-of-system public education service credit for the time petitioner spent working as a substitute teacher in Boston. The Boston school administrator certified that petitioner worked as a day-to-day substitute teacher during the fiscal year of 1973-1974 and earned total wages of $144. ORS granted petitioner's request to purchase out-of-system public education service credits for 0.0235 years.[2] The second application requested to purchase 3.1 years of maternity/child rearing service credit for part of the period between when she stopped substitute teaching in 1973 and when she began teaching full-time again in 1985.[3] By letter of January 27, 2005, ORS denied that request on the basis of the following reasoning:

> Our statute allows members to purchase Maternity/Child Rearing service when regular employment is interrupted by an official maternity or child rearing leave of absence. Your application stated that you were a casual

---

[1] At that time, petitioner was five months pregnant.

[2] Petitioner purchased the service credits.

[3] When petitioner retired she had 26.9 years of service and needed the additional 3.1 years to reach 30 years of creditable service, which would then allow her to obtain a full retirement allowance.

substitute teacher, which is not established employment, thus making you ineligible. If you were granted a leave of absence from Lincoln Public Schools for the purpose of Maternity/Child rearing we would need proof that you were granted this leave as your separation reason from Lincoln schools on their letterhead.

Petitioner's file was referred to ORS analyst Lois Musbach for review. Musbach noted that the Lincoln Schools had certified that petitioner last worked on December 21, 1973, and that her child was not born until May 17, 1974. Musbach concurred with the original determination of ineligibility but further clarified ORS's position:

The first consideration is the length of time between her last employment and the birth of her child. MCL 38.1375 is clear that the member must leave employment "for purposes of maternity, paternity or child rearing". As an "at will" employee, Ms. Bandeen chose to stop working well before the birth of her child. Without further documentation that Ms. Bandeen was medically required to leave her employment that far in advance of the birth of her child, her reason for leaving employment could not be connected to her pregnancy.

The second consideration is the position that Ms. Bandeen held. As an "at will" employee, she chooses to work or not, purely at her choice or the choice of the school. Our policy regarding substitute employment is clear in that a substitute is only considered employed on the day they are actively working. At the conclusion of each day, Ms. Bandeen is unemployed. Ms. Bandeen chose to no longer work after December 21, 1973, therefore, she had no employment from which she could claim a separation for maternity reasons. A substitute employee who is attempting to purchase service credit must make payment on a day that they are working. Being on a substitute call list is also not considered to be employment. The policy is based on the statutory definition of a member. Only a member can make a purchase. A member is defined as a public school employee.

Musbach further stated that the ability to purchase maternity/child rearing service credits was designed to mitigate the damage to an employee's career when she leaves work for maternity or parenting reasons, and that a day-to-day substitute teacher, "who has no promise of future employment, could not claim this harm."

Following a hearing on the matter, hearing referee Carol Smith issued a proposal for decision in which she adopted Musbach's reasoning. Smith stated that "MCL 38.1375 requires, in relevant part that in order to be eligible to purchase the service credit for maternity, paternity, or child rearing purposes, a person must be a public school employee or a person performing out of system public education service at the time they leave their employment to have or raise their child." Smith stated that petitioner's employment as a day-to-day substitute teacher ended at the end of the given day she worked. Furthermore, there was insufficient evidence that future dates of employment were guaranteed because there is no evidence of a contractual relationship between the school district and petitioner. There was no evidence that petitioner told the school district that she was leaving for pregnancy or child-rearing purposes, and there was no formal maternity leave given by the school district. Smith proposed that petitioner's application be denied because she failed to meet the requirements set forth in MCL 38.1375. The board adopted Smith's proposal for decision and denied petitioner's application.

Petitioner appealed to the circuit court, which reviewed petitioner's decision to determine if it was clearly erroneous. The circuit court concluded that the board's interpretation and application of the statute to the present facts was not clearly erroneous. The court denied the appeal on that ground.

I

Petitioner first argues that the circuit court erred by failing to review the board's final agency decision de novo when the facts were not in dispute and the only question presented to the court was whether the board correctly interpreted MCL 38.1375. The standard of review appropriate to a particular decision is a question of law that this Court reviews de novo. *Palo Group Foster Care, Inc v Dep't of Social Services,* 228 Mich App 140, 145; 577 NW2d 200 (1998).

Traditionally, a circuit court's review of an administrative agency's decision is limited to determining whether the decision was contrary to law, was supported by competent, material, and substantial evidence on the whole record, was arbitrary or capricious, was clearly an abuse of discretion, or was otherwise affected by a substantial and material error of law. *Dignan v Pub School Employees Retirement Bd,* 253 Mich App 571, 576; 659 NW2d 629 (2002). However, it is axiomatic that questions of statutory interpretation are reviewed by appellate courts de novo. *Shinholster v Annapolis Hosp,* 471 Mich 540, 548; 685 NW2d 275 (2004). See also *Ronan v Pub School Employees Retirement Sys,* 245 Mich App 645, 648; 629 NW2d 429 (2001).

Here, both parties agreed that the facts were not in dispute. The issue to be resolved was whether petitioner, as a day-to-day substitute teacher, was a "public school employee" at the relevant time, as that term is defined in MCL 38.1306(5), and was therefore entitled to purchase maternity/child rearing service credit pursuant to MCL 38.1375. The meaning of "public school employee," as defined in MCL 38.1306(5), is an issue of statutory interpretation that should have been reviewed de novo by the circuit court. *Shinholster, supra* at 548. Although the circuit court initially applied a

"clearly erroneous" standard of review, in ruling on petitioner's motion for reconsideration, the circuit court indicated that application of a de novo standard of review would not have changed its ruling.[4] Thus, it would be a waste of judicial resources for this Court to grant petitioner's requested relief in the form of a remand for the circuit court to consider the matter in light of the correct standard of review.

II

Petitioner argues that the circuit court erred by affirming the board's decision to deny her application to purchase maternity/child rearing service credit. "This Court reviews a lower court's review of an administrative decision to determine whether the lower court applied correct legal principles and whether it misapprehended or misapplied the substantial evidence test to the agency's factual findings, which is essentially a clearly erroneous standard of review." *VanZandt v State Employees' Retirement Sys*, 266 Mich App 579, 585; 701 NW2d 214 (2005). Therefore, a circuit court's factual determination is reversed only if this Court is "left with a definite and firm conviction that a mistake was made." *Id.* at 585. In addition, the proper construction and interpretation of a statute are questions of law, which are reviewed de novo by this Court. See *People v Sierb*, 456 Mich 519, 522; 581 NW2d 219 (1998).

---

[4] The circuit court's order denying reconsideration stated in relevant part:

> After reviewing the record once again in this case, this Court is not convinced that a different disposition of the Motion for judicial review would result, even with a de novo review on appeal. Specifically, it is this Court's opinion that the manner in which the agency applied the essentially undisputed facts in this case to the applicable statute was not contrary to the legislature's intent or the language of the statute.

The Michigan public school employees' retirement system was created to provide retirement benefits for public school employees of this state. MCL 38.1321. For public school employees who do not meet the full eligibility requirement, the system allows employees in certain instances to purchase service credit at an actuarially determined cost. MCL 38.1361 through 38.1379(a). One situation is where a public school employee leaves employment for reasons of maternity, paternity, or child rearing. See MCL 38.1375,[5] which provides in pertinent part:

> A member who left or leaves service as a public school employee for purposes of maternity or paternity or child rearing, and returns to service as a public school employee, or a person performing out of system public education service who leaves that service for purposes of maternity, paternity, or child rearing and who subsequently becomes a member of this retirement system, . . . may purchase service credit for the time period or periods during which the person was separated from service as a public school employee or during which the person was separated from performing out of system public education service because of maternity or paternity or child rearing, upon request and payment to the retirement system of the actuarial cost. . . . A member requesting purchase of service credit under this section shall certify to the board the purpose for which the member took leave and was separated from service as a public school employee.

The Public School Employees Retirement Act, MCL 38.1301 *et seq.*, defines "out of system public education service" as "service performed in public education . . . ." MCL 38.1306(2). MCL 38.1308(1) defines "service" as "personal service performed as a public school em-

---

[5] MCL 38.1375 was amended by 2006 PA 617, effective January 1, 2009. Any reference in this opinion to MCL 38.1375 refers to the former version of MCL 38.1375.

ployee . . . ." And "public school employee" is defined as "an employee of a public local school district, intermediate school district, public school academy, tax supported community or junior college . . . ." MCL 38.1306(5). That provision lists various types of employers and employment situations that qualify an employee as a "public school employee." The term "public school employee" specifically includes someone who otherwise meets the test but is "on approved leave of absence." MCL 38.1306(5). The term "employee" is not defined in the statute. Where statutory terms are undefined, they should be given their ordinary and plain meanings, and, in defining such terms, consulting a dictionary is proper. *Rakowski v Sarb,* 269 Mich App 619, 626; 713 NW2d 787 (2006). In *Rakowski,* this Court noted that the "*Random House Webster's College Dictionary* (1992), defines 'employee' as 'a person who has been hired to work for another.' " *Id.* When petitioner was hired to work as a substitute teacher, she certainly could be considered an employee. However, she was not always "hired," or under a contract of hire, by the very nature of her employment. Thus, her status at the time she left service for her alleged maternity/child rearing is at issue.

Petitioner admittedly was a day-to-day substitute teacher. The dispositive factor in the board's decision in this case was the board's determination that petitioner's position as a substitute teacher was classified as a "day-to-day," temporary assignment, without expectation of future positions. The *Random House Webster's College Dictionary* (2001) defines "substitute" as "a person or thing acting in place of another." And the *American Heritage Dictionary* (1985), in its definition of "day-to-day," includes "subsisting one day at a time with little regard for the future." Another word for such a situation is "temporary." Black's Law Dictionary (8th

ed) defines "temporary" as "[l]asting for a time only; existing or continuing for a limited time; transitory." Therefore, a day-to-day substitute teacher can properly be defined as a person employed from day to day and taking the place of a regularly employed teacher on a temporary basis or a daily basis with little regard to the future; someone who has no written agreement to work for a school district, who reports for teaching only when contacted, and who may refuse any offer of employment.

Because petitioner was a substitute teacher at the relevant time and hired only on a day-to-day basis, we conclude that she was not a public school employee at the time she decided to no longer accept substitute teaching assignments after the 1973 holiday break. She was not "hired" to work at that time. Additionally, the statute includes as a "public school employee" one who is on an "approved" leave of absence. A leave of absence presumes a relationship of duration to which an employee would expect to return and denotes a continuing relationship between the employer and the employee. Black's Law Dictionary (8th ed) defines "leave of absence" as a "worker's temporary absence from employment or duty with the intention to return." Petitioner worked only 8 to 12 days during the first half of the 1973 school year and then discontinued her service. Because petitioner was not a public school employee as defined by MCL 38.1306(5), petitioner has failed to prove that the board's interpretation of MCL 38.1375 was contrary to law and conflicted with the Legislature's intent. As a day-to-day substitute teacher, petitioner could not be classified as having a temporary absence with the intent to return. She was not guaranteed to return, and had no approval for a temporary absence. Thus, the board's determination that petitioner was not a public school employee for the purpose

of qualifying to purchase maternity/child rearing service credit was not clearly wrong nor was it contrary to legislative intent.

Moreover, petitioner has not proven that the circuit court misapplied the substantial evidence test in concluding that the board properly found that petitioner did not decide to continue service as a day-to-day substitute teacher for maternity reasons. *VanZandt, supra* at 585. "Substantial evidence is that which a reasonable mind would accept as adequate to support a decision, being more than a mere scintilla, but less than a preponderance of the evidence." *St Clair Intermediate School Dist v Intermediate Ed Ass'n/Michigan Ed Ass'n,* 218 Mich App 734, 736; 555 NW2d 267 (1996). Although some inconsistencies exist with regard to when petitioner discovered that she was pregnant, the evidence showed that petitioner last worked as a substitute teacher on December 21, 1973, and that her first baby was born in May 1974. Petitioner decided not to accept offers of teaching assignments after the 1973 holiday break only because she "was pregnant . . . and wanted to stay home." The board determined that petitioner's withdrawal from teaching assignments, five months before her baby was born, was premature in the absence of any documentation that she was medically unable to continue teaching and, therefore, that petitioner did not prove that she left substitute teaching for maternity reasons. The length of time between January 1974 and the birth of petitioner's baby, together with the lack of any documentation that petitioner was unable to teach because of a medical condition, are adequate reasons for the board's determination that petitioner did not leave for maternity reasons. Accordingly, the circuit court properly affirmed the board's decision.

Affirmed.